UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ETHAN KESSLER HALLEY, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>ANTONY BLINKEN, *et al.*,<br><br>*Defendants*. | Civil Action No. 24-571 (RDM) |

## MEMORANDUM OPINION

Plaintiffs are U.S. citizens, some of whom are domiciled in Israel, who are direct and indirect victims of the October 7, 2023 attack by Hamas on Israel or attacks by "other terrorist factions" in the region. Dkt. 3 at 8–15 (Compl. ¶ 14–61). They allege that these attacks were supported by the United Nations Relief and Work Agency for Palestine Refugees in the Near East ("UNRWA") and that Defendants—the United States Department of State, Secretary Antony Blinken, Deputy Secretary Richard Verma, and Director of the Office of U.S. Foreign Assistance Tamara Wittes—"have permitted millions of dollars to flow to UNRWA [even though it is] publicly known that such funding is diverted to terrorism and [that] UNRWA employees are complicit in that terrorism." *Id.* at 7 (Compl. ¶ 7). They seek a judicial order prohibiting Defendants "from providing any future funding to" UNRWA and "from providing any future funding to other relief, aid or humanitarian agencies or organizations that will indirectly transfer such funds to UNRWA or its officers or employees." *Id.* at 5 (Compl. ¶ 1). Or, in the alternative, they seek an order halting "any and all funding to UNRWA until it produces irrefutable evidence that none of its employees directly or indirectly assist the Hamas

terrorist organization and that none of its funding is being diverted to Hamas or other terrorist activities." *Id.*

Defendants move to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. Dkt. 10 at 1. For the reasons that follow, the Court will **GRANT** that motion.

## I. BACKGROUND

The following background is taken from Plaintiffs' factual allegations, which are taken as true for purposes of the pending motion, *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and from public acts that are subject to judicial notice, *see Kaspersky Lab, Inc. v. United States Department of Homeland Security*, 909 F.3d 446, 464 (D.C. Cir. 2018).

UNRWA is a United Nations agency, founded to provide humanitarian aid, assistance, and access to education for Palestinian refugees. Dkt. 12 at 8. The United States has historically been the "largest single-state donor to UNRWA," contributing approximately $422 million to the organization in 2023 alone. Dkt. 3 at 15 (Compl. ¶¶ 62, 64). On January 26, 2024, however, the United States suspended its funding of UNRWA, *id.* at 6 (Compl. ¶ 4), and on March 23, 2024, Congress enacted legislation barring the use of any appropriated funds for any contribution, grant, or other payment to UNRWA, notwithstanding any prior appropriations or amounts provided in fiscal year 2025, until March 25, 2025. *See Further Consolidated Appropriations Act*, 2024, Pub. L. No. 118-47, Div. G, tit. III § 301 (Mar. 23, 2024); Dkt. 10-1 at 9–10.

Plaintiffs are U.S. citizens who reside in or visited Israel between October 7, 2023 and February 28, 2024 and who have been harmed by terrorism, including the October 7 Hamas attacks on Israel. Dkt. 3 at 6 (Compl. ¶ 5). They allege that "UNRWA directly and indirectly supports Hamas in its terror campaign against the people of Israel, innocent civilians, and

American citizens;" that "[a]t least 13 UNRWA employees participated directly in the commission of atrocities against Israel during the October 7. . . attacks;" that "UNRWA facilities and schools store rockets and missiles belonging to Hamas;" and that "these facilities and employees of UNRWA provide terrorist training to Hamas and other designated terrorist organizations." *Id.* at 5 (Compl. ¶ 2).

Plaintiffs allege that any future funding of UNRWA is barred by federal law, which provides that

> [n]o contributions by the United States shall be made to the United Nations Relief and Works Agency for Palestine Refugees in the Near East except on the condition that the United Nations Relief and Works Agency take all possible measures to assure that no part of the United States contribution shall be used to furnish assistance to any refugee who is receiving military training as a member of the so-called Palestine Liberation Army or any other guerrilla type organization or who has engaged in any act of terrorism.

22 U.S.C. § 2221(c). They also allege that any future funding would violate three criminal statutes. According to Plaintiffs, any such funding would constitute the provision of material support to terrorists, in violation of 18 U.S.C. § 2339A; the provision of material support to a designated foreign terrorist organization (i.e., Hamas), in violation of 18 U.S.C. § 2339B; and the provision of financing for terrorism, in violation of 18 U.S.C. § 2339C. Dkt. 3 at 26 (Compl. ¶ 97).

Plaintiffs seek a variety of forms of relief. They seek a declaration that "Defendants are violating federal statutes by implementing only a 'temporary pause' in funding to UNRWA;" "[a] permanent injunction requiring Defendants to maintain an absolute cessation on all funding to UNRWA;" [a] permanent injunction requiring Defendants to maintain an absolute freeze on all funding to other aid, relief or humanitarian agencies or UN bodies that will directly or indirectly transfer funds to UNRWA;" and "[a] declaration that the Defendants have a

3

nondiscretionary duty to attempt to recover funds that they obligated, authorized, and/or expended without proper authorization." Dkt. 3 at 42 (Request for Relief). They also seek "[m]andamus relief compelling the government officers and agencies of the United States government to comply with the statutes, take adequate measures to prevent the diversion of federal funds to support terrorism, and to seek recovery of funds provided without authority." *Id.*

## II. ANALYSIS

Plaintiffs ask the Court to intervene preemptively in a dispute that may or may not someday emerge over an issue that lies squarely in the competence of the political branches. If Congress does not appropriate funds that can be used to make contributions to UNRWA, Plaintiffs will have nothing to challenge, and, if Congress decides to appropriate funds that can be used for that purpose, that legislation will likely (although perhaps not certainly) answer the question whether the funds may be used to make contributions (directly or indirectly) to UNRWA. Before even reaching these questions, however, the Court must determine whether Plaintiffs have Article III and statutory standing to sue. In the absence of a plaintiff with standing, the Court lacks the power to act and must dismiss the action.

### A.

Article III of the Constitution limits "[t]he judicial power of the United States" to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 2. "To state a case or controversy under Article III, a plaintiff must establish standing." *Ariz. Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133 (2011). The "irreducible constitutional minimum of standing" consists of three elements: (1) injury-in-fact, (2) causation, and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Under the first element, a plaintiff sustains an injury in fact when they suffer "an invasion of a legally protected interest" that is both (a) "concrete and particularized" and (b)

"actual or imminent, not conjectural or hypothetical." *Id.* at 560 (citations and internal quotation marks omitted). Under the second element, the injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (citation and alterations omitted). Under the third element, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon v. E. Ky Welfare Rts. Org.*, 426 U.S. 26, 38 (1976)).

It bears emphasis that "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *see also Davis v. Federal Election Comm'n*, 554 U.S. 724, 734 (2008); *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). Thus, "a plaintiff's standing to seek injunctive relief does not necessarily mean that the plaintiff has standing to seek retrospective damages," *TransUnion LLC*, 594 U.S. at 436, and vice versa, *see City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (denying injunctive relief where plaintiff could not demonstrate "a sufficient likelihood that he will again be wronged in a similar way"). Here, Plaintiffs seek only prospective declaratory and injunctive relief; they do not seek to recover damages from the United States for any past harms that they have suffered, nor could they do so given (among other hurdles) the sovereign immunity of the United States.

As a result, to invoke Article III jurisdiction, they must "establish a sufficient likelihood of future injury." *Food & Drug Admin. v. All. for Hippocratic Med*, 602 U.S. 367, 381 (2024). That future injury, moreover, must be "certainly impending;" allegations of "possible future injury" will not suffice. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *see also Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (A party that "seeks prospective declaratory

5

and injunctive relief . . . must establish an ongoing or future injury that is 'certainly impending;' [they] may not rest on past injury"). In addition, a plaintiff seeking solely prospective relief must allege (and must eventually prove) that it is "likely" that the challenged government action will cause that future injury—that is, the plaintiff must satisfy the traceability requirement. *See All. for Hippocratic Med.*, 602 U.S. at 382. A plaintiff seeking redress for an asserted, prospective injury that is not tied directly to a governmental action—that is, an injury that will not flow from a regulatory action—moreover, may not "rely on speculation about the unfettered choices made by independent actors not before the courts." *Clapper*, 568 U.S. at 415 n.5 (citations and internal quotation marks omitted). Finally, a plaintiff asserting a prospective injury must allege (and eventually prove) that the relief she seeks is likely to redress that injury.

Here, the Court does not doubt that Plaintiffs have suffered "very real and palpable injur[ies]." Dkt. 12 at 16. But those *past* injuries are insufficient to establish standing to seek *prospective* relief. As Defendants explain, "[a]lthough Plaintiffs undoubtedly suffered from the horrific events of October 7, allegations of past injury do not suffice to establish standing when Plaintiffs seek forward-looking relief." Dkt. 13 at 7–8. Any claim of future harm to Plaintiffs caused by future unlawful United States contributions to UNRWA turns on speculation upon speculation. It requires the Court to assume that Congress will appropriate funds that may be used to make contributions to UNRWA, and that Congress will do so while simultaneously declining to address whether using those funds in that manner would violate 22 U.S.C. § 2221(c) or any other federal statute. It requires the Court to assume that the then-serving Secretary of State, Deputy Secretary of State, or Director of the Office of U.S. Foreign Assistance will likely decide to use those appropriated funds to contribute to UNRWA. It requires the Court to assume that UNRWA will then likely use those funds (directly or indirectly) to support Hamas or other

terrorist organizations in the Middle East and that Hamas or any other terrorist organization that receives those funds would likely use the funds (or other funds that are fungible with those funds) to commit an act of terrorism. And, it requires the Court to assume that at least one of the plaintiffs is likely to be a victim of that act of terrorism. This chain of possibilities is far too remote and speculative to support standing to sue. *See Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin*, 489 F.3d 1279, 1293 (D.C. Cir. 2007) ("The complainant must allege an injury . . . that is distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical.") (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

Plaintiffs allege, in the alternative, that they are suffering ongoing injury resulting from the "millions upon millions of dollars Defendants sent to UNRWA in the past," Dkt. 12 at 6–7, and that Defendants should be required to claw back those unlawful contributions. This theory—that is, that Plaintiffs "live in perpetual fear of further terrorist attacks," Dkt. 3 at 8 (Compl. ¶ 15)—is also unpersuasive, even when considered in conjunction with the past injuries that Plaintiffs have suffered. To start, Plaintiffs have not alleged, and have not carried their burden of showing, that efforts by the State Department to claw back contributions that the United States made to UNRWA prior to January 26, 2024—at which point the United States suspended its contributions—would redress that harm. Indeed, the complaint does not even allege that any unspent United States contributions remain in the UNRWA coffers, much less that those specific funds could be recouped. Nor do Plaintiffs allege—and it seems unlikely that they would have any basis to allege—that clawing back any remaining portion of the

7

contributions that UNRWA received from the United States almost a year ago would (even if possible) redress Plaintiffs' "fear of further terrorist attacks."[1]

The Court, accordingly, concludes that Plaintiffs have not adequately pled a sufficiently particularized or concrete ongoing or future injury caused by any financial support that the United States has provided or will likely imminently provide to UNRWA. Plaintiffs' alleged injury also raises traceability concerns, given that it rests on the potential future conduct of a third party. *See, e.g.*, *Lujan*, 504 U.S. at 562 ("When, however, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed.").

Plaintiffs take issue with one step in this analysis and argue that, to the extent the Court is relying on the Further Consolidated Appropriation Act of 2024, 2024, Pub. L. No. 118-47, Div. G, tit. III § 301 (Mar. 23, 2024)—which bars the use of any appropriated funds for any contribution, grant, or other payment to UNRWA, notwithstanding any prior appropriations or amounts provided in fiscal year 2025, until March 25, 2025—that intervening event poses a question of mootness, not standing. That characterization of the relevant events and the proper doctrinal approach is far from clear. At the time Plaintiffs brought suit, the United States had already suspended funding for UNRWA, and Congress did not change the then-current state of affairs by enacting the appropriation measure; rather, it confirmed what had already occurred and ensured that the then-current state of affairs—that is, no United States funding for UNRWA—would continue, with certainty, until at least March 25, 2025. But, in any event, even if enactment of the appropriations measure is viewed through the lens of mootness, rather than

---

[1] The same holds true even if the Court focuses exclusively on the state of affairs at the time Plaintiffs filed their corrected complaint on March 1, 2023, thus avoiding any need to parse the difference between standing and mootness.

standing, the result remains the same.  As the D.C. Circuit has held:  "Where Congress enacts intervening legislation that definitively resolves the issues a litigant seeks to put before us, the claims are moot and we are precluded from deciding them."  *Nuclear Energy Inst., Inc. v. Env't Prot. Agency*, 373 F.3d 1251, 1309 (D.C. Cir. 2004).

Plaintiffs respond that the legislation did not "definitively resolve" the issue and that the voluntary-cessation exception to the mootness doctrine, accordingly, applies.  Under that exception, courts are generally required to consider whether the defendant "voluntarily cease[d] the challenged activity" and, if so, whether "it is 'absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'"  *Pub. Citizen, Inc. v. FERC*, 92 F.4th 1124, 1128 (D.C. Cir. 2024) (quoting *Friends of the Earth, Inc.*, 528 U.S. at 190).  But the D.C. Circuit "stringent[ly]," *id.* (citation omitted), applies the voluntary-cessation exception: the exception provides no cover when the "facts do not suggest any arguable manipulation of [the court's] jurisdiction."  *Id.* (quoting *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 (2001)).  Indeed, as relevant here, the D.C. Circuit has expressed "'serious doubts' that the doctrine should *ever* apply when assessing acts of Congress because it would be 'inappropriate for the courts . . . to impute such manipulative conduct to a coordinate branch of government.'"  *Id.* at 1128–29 (quoting *Clarke v. United States*, 915 F.2d 669, 705 (D.C. Cir. 1990) (emphasis added)); *see also Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1230 (D.C. Cir. 2021) (where a federal agency granted an exemption from a challenged regulation, the D.C. Circuit declined to apply the voluntary-cessation exception because there was no basis to conclude that the agency has granted the exemption "to manipulate the judicial process").  Plaintiffs cannot overcome this hurdle.  Considered in context, it snaps credulity to suggest that Congress enacted the restriction on use of appropriated funds to manipulate—or to avoid—the Court's jurisdiction.  *See Alaska*,

9

17 F.4th at 1229.  The Court, accordingly, concludes that the voluntary-cessation exception is inapplicable.

Finally, the Court notes that the appropriations measure simply adds one more hurdle on top of any already insuperable barrier to suit.  Even without the appropriation measure, Plaintiffs have failed to allege facts that, even if accepted as true, plausibly establish that they are likely to suffer an imminent, non-speculative injury caused by the challenged actions unless granted some form of prospective relief—be it an injunction barring the State Department from contributing to UNRWA or an order requiring the State Department, to the extent possible, to claw back any unspent and segregable contributions.

**B.**

To the extent Plaintiffs premise their suit on the Mandamus Act, 28 U.S.C. § 1361, they face yet another jurisdictional obstacle.  "The extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of 'a clear nondiscretionary duty.'" *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).  Consistent with this understanding, a court has jurisdiction under the Mandamus Act "only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010) (quoting *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002)).  In order to satisfy "the first requirement at this stage of the litigation, *i.e.*[,] motion to dismiss, [Plaintiffs] must plausibly allege that [the Department] is, in effect, defying the law." *Citizens for Resp. & Ethics in Washington v. Trump*, 924 F.3d 602, 606 (D.C. Cir. 2019).

In *Citizens for Responsibility*, the D.C. Circuit concluded that it did not have mandamus jurisdiction to review President Trump's compliance with the Presidential Records Act, partly because the President had issued a memorandum instructing his staff on "record management," and therefore the court had "no basis" for saying the President was "simply defying a law enacted by Congress." *Id.* at 608 (quoting *In re Aiken County*, 725 F.3d 255, 266 (D.C. Cir. 2013)). Plaintiffs' Mandamus Act claim founders here for similar reasons; Defendants "are not presently funding—and cannot fund—UNRWA." Dkt. 13 at 15. As with *Citizens for Responsibility*, there is no basis for this Court to conclude that Defendants are defying any law. Nor have Plaintiffs identified any law requiring the Secretary of State or any other federal official to make best efforts to claw back funds previously contributed to UNRWA—much less a law that imposes a "clear nondiscretionary duty" to recoup past contributions.

The Court will, accordingly, dismiss Plaintiffs' claims under the Mandamus Act for lack of jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's motion to dismiss, Dkt. 10. A separate order shall issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: November 21, 2024